# ⁀ Ong *against* Campbell.

A party to an agreement may resist the specific execution of it, because of a waiver of it by parol, or by acts of the other party, which induce a presumption of abandonment.

A vendee, by parol, of land, stipulated, as the consideration of his purchase, to extinguish a mortgage which was an incumbrance upon the title; instead of which, he purchased an assignment of it, and after ejectment brought against him by the vendor, he brought suit upon the mortgage. *Held,* that he thereby consented to treat the contract as at an end, and the plaintiff was entitled to recover.

ERROR to the common pleas of *Westmoreland* county.

This was an action of ejectment by Jesse Ong against William Campbell and John Shaner for the undivided three-eighth parts of nine acres of land and salt-works.

The legal title to the three-eighths for which the ejectment was brought, was in the plaintiff, and the other five-eighths were in the defendants.

The proof was, that in the spring of 1827, the plaintiff by parol, sold his interest in the land and works to the defendant, Campbell, in consideration that he would pay a mortgage of Jesse Ong to John B. M'Grew. The defendants went into possession of the premises, in pursuance of the contract, and made some improvements; afterwards, in June 1828, William Campbell purchased an assignment of the mortgage by M'Grew to himself, and, after this ejectment was brought by Ong, sued the mortgage.

The counsel for the plaintiff then requested the court to charge the jury, as follows:

1st. That Campbell having taken from John B. M'Grew, the mortgagee, an assignment of the mortgage and bonds, subject to the equity of redemption of Ong, on the 13th of June 1828, and having sued out a *scire facias* on said mortgage against Ong, setting forth on the record, that the mortgage debt was then due and

[Ong v. Campbell.]

unsatisfied, is estopped from alleging now, that he, Campbell, paid the mortgage debt to M'Grew for Ong, in performance of a parol contract entered into between him and Ong, more than a year previous to the assignment, by the terms of which, Campbell agreed to pay off the mortgage debt to M'Grew for Ong, and he was to convey his interest in the land in dispute, to Campbell in fee.

2d. That Campbell having the mortgage and bonds in his possession, for upwards of seven years before the bringing of this suit, without ever offering to release Ong or cancel the bonds and mortgage, is evidence of a recision of the alleged contract on the part of Campbell.

The court answered to plaintiff's first point.

1st. We think that this point has been sufficiently met by the observation of the court in the preceding charge. But to prevent any misapprehension upon the subject, we instruct you, that if you are satisfied from the evidence, that there was a parol sale in the spring of 1827, by Ong to Campbell, of his interest in the salt-works, followed by Campbell taking possession of the premises, boring the salt well deeper, rendering it much more valuable, and making other repairs and improvements upon the property, disclosing such a case as is not within the statute of frauds, and that his object in taking the assignment referred to, and instituting the action of *scire facias* on the mortgage, was intended merely to complete his title by procuring the legal estate, and not to pursue Ong for any of M'Grew's debt which might remain, nor to disaffirm the contract with Ong, then he is not estopped in the present action from setting up the parol contract. If he intended by these proceedings to disaffirm the contract, then the plaintiff has a right to say that it has been rescinded.

2d. No demand of the bonds or mortgage having been made on Campbell by Ong, we will not instruct you that the retention of the bonds and mortgage are conclusive evidence of a recision of the contract; but it is a circumstance amongst others, from which the jury may draw an inference of that kind.

Verdict and judgment for the defendants.

*Beaver*, for plaintiff in error.

All the authorities agree, that a substantial part performance of a parol agreement, for the purchase and sale of lands, will take the case out of the statute of frauds. In cases where the vendor seeks a specific execution of such an agreement, delivery of possession, and incurring expense and trouble to enable him to complete his agreement, is necessarily a sufficient part performance, as in the case of Miller *v.* Hower, 2 *Rawle* 53. But a vendee to elude the operation of the statute, must rely on a substantial part performance of the agreement according to its terms. 1 *Fonbl.* 163. The acts done by the vendee, must constitute substantial evidence of

VI.—2 z

[Ong v. Campbell.]

the bargain, 1 *Pow. Con.* 300, 1 *Smith's Laws* 395, and be such as would not have been done, unless on account of the agreement, and with a view to perform it. Cook *v.* Tombs, 2 *Anstr.* 424, Gunter *v.* Halsey, *Amb.* 586. The past performance must unequivocally refer to, and result from the agreement, and must be such as, that the party would suffer an injury amounting to fraud by the refusal of the other party to execute the agreement. Clinan *v.* Cook, 1 *Sho. & Lefr.* 41; Philips *v.* Thompson, 1 *Johns. Ch. Rep.* 131; 2 *Johns. Ch. Rep.* 111; 14 *Ves.* 386; 4 *Kent's Com.* 450, 451. The act relied on as part performance, must not be voluntary merely, but must constitute satisfactory evidence of the particular agreement alleged; 2 *Bro. C. C.* 140; 1 *Johns. Ch. Rep.* 131; for if the act be merely introductory or ancillary to the agreement, it is within the statute of frauds, 1 *Bro. C. C.* 412; 2 *Bro. C. C.* 559; 1 *Madd. Ch.* 301; 2 *Stark. Ev.* 601; 3 *Atk.* 4; M'Farland *v.* Hall, 3 *Watts* 37; Peifer *v.* Landis, 1 *Watts* 392; and it is only in such cases, where no adequate redress can be made short of a specific execution of the agreement, that the title to lands ought to be considered as having passed under a parol agreement. Eckert et al. *v.* Eckert, 3 *Penns. Rep.* 362; Galbraith *v* Galbraith, 5 *Watts* 146.

The agreement alleged by defendants, has not been substantially executed. Campbell's purchase of the mortgage debt was voluntary, or at most, only introductory and ancillary to the agreement; it is not evidence in the slightest degree of the agreement, nor does it refer to, or result from the agreement set up by him. Campbell cannot suffer any injury whatever, from Ong's refusal to execute the alleged agreement; he never gave Ong a farthing, as a consideration for the agreement, nor has he acted upon the faith of Ong's promise. Campbell has the legal means in his power, to procure from Ong adequate redress by suit, upon the bonds and mortgage, of which he has availed himself, inasmuch, as there is a suit on the mortgage by Campbell, as assignee of the mortgagee now pending against Ong.

Campbell's possession is entitled to no weight; he was a tenant in common with Ong in the premises; he was therefore in possession under that right; M'Masters *v.* Bell, 2 *Penns. Rep.* 183; Smith ex dem. Teller *v.* Bartis, 6 *Johns. Rep.* 197; for, in order to give the circumstance of possession any weight, it must be a possession delivered pursuant to the parol agreement, which cannot be accounted for in any other way than supposing the agreement to have been made. Jones *v.* Peterman, 5 *Serg. & Rawle* 543.

There is no rule better established than, that every agreement, to merit the interposition of a court of equity in its favour, must be fair, just, reasonable, certain in all its parts, mutual, made upon a good or valuable consideration, consistent with the general policy of a well regulated society, and free from fraud, circumvention and surprise. Campbell's case does not come within this rule.

The settled practice of the supreme court is, to proceed on equity

[Ong v. Campbell.]

principles. Ebert *v.* Wood, 1 *Binn.* 217. And to enforce the specific execution of agreements, for the sale and purchase of lands, whenever a court of chancery would sustain a bill for that purpose. Henderson *v.* Hays, 2 *Watts* 148. But a court of equity would not decree a conveyance from Ong to Campbell on the facts of this case, because the agreement is uncertain, wants mutuality and a consideration to support it, nor is the case, as presented by Campbell himself, free from fraud, circumvention and surprise. The agreement alleged by Campbell is, that Ong was to convey his interest in the salt-works to Campbell, and Campbell was to give up an article, and pay a debt for Ong due to John B. M'Grew. Whether the article was of any value or not, or whether it was, or was not, given up according to agreement, does not appear; but as it was part of the consideration of the agreement, it was incumbent on Campbell to show what it was, and prove that it was given up to Ong. On the 1st of April 1827, the mortgage debt and interest, was 419 dollars 36 cents, which sum Campbell alleged he agreed to pay to Ong's creditor. On the 13th of June 1828, the sum of 446 dollars 71 cents, was due on the mortgage, at which time, Campbell took an assignment of the mortgage and the bonds, in consideration of 319 dollars, and in the assignment expressly stipulates that he holds the premises assigned to him, subject nevertheless to the rights and equity of redemption of Jesse Ong, his heirs and assigns, and to November term 1835, sued out a *scire facias* on the mortgage against Ong. A court of chancery would not compel Ong to convey, since Campbell by his own showing, has fraudulently evaded his agreement; Ong's debt is not paid, his liability is not abated, Campbell's conduct is a legal abandonment of his agreement, otherwise he perpetrated a gross fraud on Ong's creditor. In either aspect of the case, Campbell is not entitled to the interposition of a court of equity in his favour, for it is a rule of that court, that relief will not be given to a party, who is chargeable with unfair conduct in relation to the contract he seeks to enforce. Thompson *v.* Todd, 1 *Peters's Rep.* 380, 385. Before the legal title of the plaintiff could be considered as having passed under the agreement, it was indispensably necessary that Campbell should have done every thing on his part necessary to be done, in order to obtain a decree for specific performance, 7 *Serg. & Rawle* 298; 5 *Binn.* 105, in which he has substantially failed; therefore for want of equity, the case is not taken out of the statute of frauds.

The court below erred in charging the jury, that the statute for the prevention of frauds and perjuries, was "qualified and restrained by judicial construction;" that, "if the jury believed the defendants had made out their case; that they had established the contract; possession taken under the contract, and improvements of value to the property made;" then the jury should render their verdict for the defendants, unless the contract had been subsequently rescinded. The charge refers both the law and the fact

[Ong v. Campbell.]

to the jury, and is, therefore, erroneous. It was the duty of the court to decide upon the legal effect of the assignment, by J. B. M'Grew to Campbell, and Campbell's subsequent suits against Ong on the mortgage, and to instruct the jury, as matter of law, whether Campbell was, or was not estopped from alleging, that he, Campbell, had paid the mortgage debt to M'Grew for Ong, in performance of a parol agreement with Ong, for that purpose. But the court submitted the construction of the deed of assignment, and the record of the *scire facias* suit on the mortgage, to the jury as a question of fact, contingent upon the intention of Campbell, which was error. Welsh *v.* Duson, 3 *Binn.* 337. The court further instructed the jury, "if Campbell's object, in taking the assignment of the mortgage and bonds, was merely to keep himself safe, that he did not intend to coerce payment of the money, that the *scire facias* on the mortgage, which is purely a proceeding in *rem,* and could not affect Ong's other property, was merely with a view of extinguishing the legal title of Ong, to enable him to make title to his vendees, and not to disaffirm the contract, we think, the proceedings would not amount to a recision of the contract. But, if you believe it has been established, he should retain what he purchased, and if defence is made in the mortgage suit, he must fail in that." This part of the charge of the court, is also erroneous; Campbell having made his election of the remedy to which he was entitled, he was bound by it, and the court should have so instructed the jury. It was also error, to tell the jury, that Campbell must fail in his suit against Ong on the mortgage, if Ong made a defence.

The answer to plaintiff's first point, submits the law and the fact to the jury, to be decided by them.

Whatever Campbell's secret intention may have been, that intention must give way to the legal intent.

The court submitted to the determination of the jury, destitute of evidence, material facts, as facts, which might nevertheless be found, which was an encouragement to the jury to err. Stouffer *v.* Latshaw, 2 *Watts* 166; Carpenter *v.* Moyer, 5 *Watts* 485.

*H. D. Foster* and *Kuhns,* for defendants in error.

The opinion of the Court was delivered by

Gibson, C. J.—The defendants' remedy in equity, would be by bill for an injunction in the nature of specific performance, *Eden on Injunctions* 32; for, though the books mention, as instances of it, injunctions to restrain ejectments against tenants holding by agreement for a lease, the cases are identical in principle. The cause stands, therefore, as it would stand before a chancellor, on a bill by the defendant for specific performance. Now it is settled, that an agreement may be resisted for a waiver of it by parol, or by *acts* which induce a presumption of abandonment. 1 *Madd. Ch.* 407, 8. Thus, even dormancy of the contract precludes a

[Ong v. Campbell.]

party from insisting on it; much more so, does trifling with it, or reluctance to perform it; and, indeed, any act inconsistent with it, is a waiver of it.   Besides, a party calling for performance, makes performance on his own part, or tender of it, a condition precedent: and how stands the cause with these principles?   The defendant went into possession under a purchase, and, to enable the plaintiff to execute it, stipulated to extinguish a mortgage which was an incumbrance on the title; instead of which, he purchased an assignment of it, and holds it, not only unextinguished, but in active operation.   It will not be pretended, that this was performance to the letter; and it is equally clear, that the mortgage was kept on foot for something different from performance in substance.   It is in vain to say, he holds it as security for what he paid for it.   His stipulated security was the contract and its means of enforcement.   He undertook to abide by it implicitly; and it exacted a thing from him, for which there was to be no equivalent.   There is, indeed, a class of cases, in which specific performance is decreed on principles of compensation and indemnity for a variance from the description of the estate sold; with this limitation, however, that there be not a substantial variance from the contract; but in Drewe *v.* Hanson, 6 *Ves.* 675, Lord Eldon intimated, and in Alley *v.* Deschamps, 13 *Ves.* 228, Lord Erskine asserted, that even in this particular, the doctrine had been carried too far.   There the party incautiously promised what, it happened, he could not exactly perform; but no case dispenses with exact performance by one who has power to perform, and refuses to exert it, insisting that something else than performance be taken for it.   It is immaterial, therefore, that the mortgage, in the defendants' hands, was not an obstacle to a conveyance in confirmation of the title: it is enough, that the plaintiff had required, and the defendant had promised, that it should be put entirely out of the way.   That the plaintiff should be exposed to it as an instrument of compulsion, is inconsistent with the form, as well as the substance of the agreement.   We know not, whether it contains a covenant for payment; but the bonds which were assigned with it, and are in legal contemplation a part of it, were attended with the same effect: and the defendant procured them, for what?   Certainly not to get them out of the way of the contract.   He assumed an attitude of resistance by the very act.   But to insure the assistance of a chancellor, requires an observance of the contract in spirit and in truth; and the defendant could not, consistently with it, so take his measures as to appear in the garb of a purchaser and mortgagee at the same time, and demand a conveyance or the debt, as the purchase should turn out to be a good or bad one.   It may be, that the fraudulent procurement of the mortgage and personal securities, would preclude him from using them; but as a purchaser has a right to insist on a legal title because it is his bargain, so has the plaintiff a right to insist on a legal extinguish-

[Ong v. Campbell.]

ment.    Though the defendant could not enforce the mortgage against the terms of his agreement, the procurement of it was an act of such faithlessness, as would at once determine a chancellor to withhold his assistance from him.    The procurement of it, however, is not all.    He has proceeded on it since the institution of the present suit; and it is unimportant, that he did so only, when the plaintiff had disaffirmed the purchase by an action inconsistent with it.    By closing with him on his own terms, the defendant consented to treat the contract as at an end.    It is impossible to say, that a measure whose tendency is to put the title beyond the plaintiff's control, can be subordinate to specific execution.    It was a false move, and a fatal one, even had the game not been lost; nor does the fact, that it was made subsequently to the action, preclude the plaintiff from taking advantage of it.    It is not a part of the title which has sprung into existence since the action, but a circumstance to rebut an equity set up in derogation of the title; and a chancellor, guided by discretion in the use of his extraordinary powers, would disregard the time when a party seeking reconciliation with the contract had repudiated it.    Even at law, acts done since the last continuance, may be pleaded in bar; but to say nothing about the inadmissibility of a special plea in ejectment, there can be no such thing by a plaintiff.    The case is, undoubtedly, not within the statute of frauds; but on the ground indicated, the defendant, whatever be his rights as a mortgagee, is precluded from calling for specific performance.

Judgment reversed, and a *venire facias de novo* awarded.